No. 23-55404

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**LINDSAY OKONOWSKY**,
*Plaintiff-Appellant*,

v.

**MERRICK B. GARLAND**,
*Defendant-Appellee.*

Appeal from the United States District Court
Central District of California
No. 2:21-cv-07581-VAP-AS

---

**APPELLEE MERRICK B. GARLAND'S ANSWERING BRIEF**

E. MARTIN ESTRADA
*United States Attorney*
DAVID M. HARRIS
*Assistant United States Attorney*
*Chief, Civil Division*
ZAKARIYA K. VARSHOVI
Assistant United States Attorney
300 N. Los Angeles Street, Suite 7516
Los Angeles, California 90012
Telephone: (213) 894-3994
E-mail: zakariya.varshovi@usdoj.gov

Attorneys for Defendant-Appellee
Merrick B. Garland

# Table of Contents

I.     INTRODUCTION ................................................................ 5

II.    COUNTER-STATEMENT OF THE ISSUES ................................. 6

III.   STATEMENT OF JURISDICTION ........................................... 7

IV.   STATEMENT OF THE CASE ................................................. 7

     A.    Factual Background ................................................... 7

          1.    Okonowsky Discovers the Instagram Page Outside the Workplace and FCC Lompoc Takes Immediate Remedial Action ........................................... 7

          2.    FCC Lompoc Investigator Meets with Okonowsky to Discuss Her Complaints Regarding the Page ........... 8

          3.    FCC Lompoc Refers Okonowsky's Complaints to its Office of Internal Affairs ............................ 9

          4.    FCC Lompoc Re-Assigns the Creator of the Page Following Okonowsky's Complaint ............................ 10

          5.    FCC Lompoc Convenes a Threat Assessment Team. ...................................................................... 10

          6.    The Threat Assessment Team Issues its Report Making Several Recommendations ............................ 11

          7.    Implementation of the Threat Assessment Team's Recommendations and Termination of the Page ........ 12

          8.    Okonowsky's Post-Complaint Career at the BOP ....... 13

     B.    Procedural Background ............................................ 13

V.    STANDARD OF REVIEW ..................................................... 13

VI.   SUMMARY OF THE ARGUMENT .......................................... 14

VII.  ARGUMENT ..................................................................... 16

    A.  The District Court Correctly Concluded that the Posts
       Were Not Sufficiently Severe or Pervasive ........................... 16

    B.  The District Court Properly Found that the BOP took
       Adequate Remedial Measures to Address the Alleged
       Harassment ........................................................................ 25

VIII. CONCLUSION ............................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Alioto v. Assoc. Exch. Inc.,*
    482 F. App'x 222 (9th Cir. 2012) ...................................................... 24

*Candelore v. Clark Cnty. Sanitation Dist.,*
    975 F.2d 588 (9th Cir. 1992) ........................................................... 18

*Christian v. Umpqua Bank,*
    984 F.3d 801 (9th Cir. 2020) ........................................................... 19

*Doe v. Oberweis Dairy,*
    456 F.3d 704 (7th Cir. 2006) ........................................................... 21

*Domingo v. Brennan,*
    639 F. App'x 418 (9th Cir. 2016) ...................................................... 22

*E. & J. Gallo Winery v. EnCana Corp.,*
    503 F.3d 1027 (9th Cir. 2007) ......................................................... 14

*EEOC v. Prospect Airport Servs., Inc.,*
    621 F.3d 991 (9th Cir. 2010) ........................................................... 24

*Fried v. Wynn Las Vegas, LLC,*
    18 F.4th 643 (9th Cir. 2021) ................................................. 13, 14, 16

*Fisher v. Mermaid Manor Home for Adults, LLC,*
    192 F. Supp. 3d 323 (E.D.N.Y. 2016) ............................................... 21

*Fuller v. Idaho Dep't of Corr.,*
    865 F.3d 1154 (9th Cir. 2017) .................................................... 17, 18

*Fuller v. Idaho Dep't of Corr.,*
    694 F. App'x 590 (9th Cir. 2017) ................................................ 18, 21

*Kortan v. Cal. Youth Auth.,*
    217 F.3d 1104 (9th Cir. 2000) ........................................................ 23

*Isiramen v. Yuma Reg'l Med. Ctr.,*
    838 F. App'x 298 (9th Cir. 2021) ................................................... 24

*Intlekofer v. Turnage,*
    973 F.2d 773 (9th Cir. 1992) ......................................................... 27

*Lapka v. Chertoff,*
    517 F.3d 974 (7th Cir. 2008) ......................................................... 21

*Manatt v. Bank of Am., NA,*
    339 F.3d 792 (9th Cir. 2003) ................................................... 22, 23

*Nagar v. Found. Health Sys.,*
    57 F. App'x 304 (9th Cir. 2003) ..................................................... 23

*Nichols v. Azteca Rest. Enterprises, Inc.,*
    256 F.3d 864 (9th Cir. 2001) ......................................................... 16

*Patee v. Pacific Northwest Bell Tel.,*
    803 F.2d 476 (9th Cir. 1986) ......................................................... 20

*Sanchez v. City of Santa Ana,*
    936 F.2d 1027 (9th Cir. 1990) ................................................. 23, 24

*Surrell v. Cal. Water Serv. Co.,*
    518 F.3d 1097 (9th Cir. 2008) ....................................................... 22

*Swenson v. Potter,*
    271 F.3d 1184 (9th Cir. 2001) ................................. 25, 26, 27, 28

*Vasquez v. County of Los Angeles,*
    307 F.3d 884 (9th Cir. 2002) ......................................................... 23

*Watson v. Las Vegas Valley Water Dist.,*
    268 F. App'x 624 (9th Cir. 2008) ................................................... 28

## I.  INTRODUCTION

Former Bureau of Prisons (BOP) psychologist Lindsay Okonowsky initiated this hostile work environment action based on a handful of distasteful memes a coworker posted on his personal social media account. Despite Okonowsky's insistence that the posts were harassing, the evidence shows that no post was ever sent to her, no post was ever displayed or shown to her in the workplace, and no post was discussed with her without her consent. Inexplicably, Okonowsky even circumvented her coworker's efforts to block her from his account by creating a new anonymous account to view the very memes she found so distressing.

After considering the totality of the evidence, the district court concluded that even if certain posts could be construed as aimed at Okonowsky despite none referencing or otherwise identifying her, the five posts that implicated a protected characteristic and appeared over a two-month period were not sufficiently severe or pervasive to establish a hostile work environment.

The district court next concluded that the BOP took appropriate and adequate remedial measures to address Okonowsky's concerns,

including investigating her complaint regarding the posts and implementing both temporary and permanent measures to end the alleged harassment. Those remedial actions included the voluntary reassignment of Okonowsky to another facility and the issuance of a cease-and-desist order and a counseling referral to the employee whose social media page was at issue.

Because the district court's decision was correct on both counts, this Court should affirm.

## II. COUNTER-STATEMENT OF THE ISSUES

1. Whether Okonowsky raised a triable issue as to whether the social media posts were sufficiently severe or pervasive to constitute a hostile work environment where the conduct complained of took place outside of the work environment, the posts were not directed to Okonowsky, and only five posts, which were published over a two-month period, were based on a protected characteristic.

2. Whether the BOP took adequate remedial measures to address the alleged harassment by investigating Okonowsky's complaint, offering her a voluntary reassignment to a different facility,

and issuing a cease-and-desist order and counseling referral to the

employee who created the offending social media account.

## III.  STATEMENT OF JURISDICTION

Appellee does not dispute Okonowsky's statements that this Court

has jurisdiction over this appeal and that her appeal is timely.

## IV.  STATEMENT OF THE CASE

### A.  Factual Background

#### 1.  Okonowsky Discovers the Instagram Page Outside the Workplace and FCC Lompoc Takes Immediate Remedial Action

From 2018 to 2021, Lindsay Okonowsky was a staff psychologist

at the Federal Correctional Complex (FCC) at Lompoc, California. 3-

ER-0250, 256. On February 16, 2020, Okonowsky discovered an

Instagram page named "8_and_hitthe_gate" (the Page) while browsing

on her personal Instagram account. 3-ER-0250.

Two days later, on February 18, 2020 Okonowsky met with FCC

Lompoc's Acting Warden (AW) James Engleman to discuss the Page. 4-

ER-0420. During their meeting, Okonowsky complained that the Page

was "inappropriate" and "sexist," contained material that "target[ed]

specific departments," and "could pose a significant public relations

issue" for FCC Lompoc. 3-ER-0340. That same day, AW Engleman

instructed Special Investigative Agent (SIA) Victor Gonzales to investigate Okonowsky's complaint. 4-ER-0420. Because Okonowsky believed that a Special Housing Unit staff member was responsible for the Page, Okonowsky's supervisor re-assigned her, with her consent, from FCC Lompoc's Medium Facility to its Low Facility. 4-ER-0416.

### 2. FCC Lompoc Investigator Meets with Okonowsky to Discuss Her Complaints Regarding the Page

The day after her meeting, Okonowsky e-mailed AW Engleman, writing "I think the most recent post I sent you may warrant another conversation. If you have time today, please give me a call." 4-ER-0423. Okonowsky's e-mail referred to a particular meme on the Page with an image of former House Speaker Nancy Pelosi tearing up former President Trump's State of the Union address, with: "When you get butthurt by memes," and "Tomorrow's forecast: hot enough to melt a snowflake" with the hashtag "#youcantakeadickbutnotajoke." 4-ER-0452. The next morning, AW Engleman forwarded Okonowsky's e-mail to SIA Gonzales who called Okonowsky that morning to schedule a meeting to discuss her complaints. 4-ER-0420.

On February 26, 2020, just over one week after her initial meeting with AW Engleman, Okonowsky met with SIA Gonzalez to discuss her complaints regarding the Page. *Id.* She met with SIA Gonzales again later that same week, claiming that FCC Lompoc employees commented on the Page's posts that referenced FCC Lompoc. 3-ER-0252.

### 3. FCC Lompoc Refers Okonowsky's Complaints to its Office of Internal Affairs

On March 7, 2020, Okonowsky e-mailed AW Engleman another meme from the Page. 4-ER-0420. This meme captioned a picture of a woman holding a milkshake with: "Feeling cute, might put on a watch later," and "If psychology had to cover the morning watch shifts all weekend, nobody'd [*sic*] ever go on watch #changemymind." 4-ER-0425; 3-ER-0283. AW Engleman forwarded Okonowsky's e-mail to SIA Gonzales and directed him to refer her complaints regarding the Page to the Office of Internal Affairs while the FCC Lompoc Investigation was pending. 4-ER-0420-21.

That same day, the Page's owner blocked Okonowsky from accessing the Page. 3-ER-0261. She then created a new anonymous Instagram account in order to continue viewing the Page daily. *Id.*

### 4. FCC Lompoc Re-Assigns the Creator of the Page Following Okonowsky's Complaint

On March 11, 2020, Okonowsky submitted a lengthy memo to AW Engelman regarding the Page. 4-ER-0421. Her memo was 48 pages long and included 20 pages of memes. 3-ER-0258-0305. The memo also alleged that Steven Hellman, a correctional officer, created the Page. 3-ER-0262. The next day, AW Engelman sent Okonowsky's memo to SIA Gonzales, directing him to provide the memo to the Office of Internal Affairs as part of the original referral. 4-ER-0421. Based on Okonowsky's allegations, Hellman was reassigned to a different facility while the investigation of Okonowsky's complaint was pending. *Id.*

### 5. FCC Lompoc Convenes a Threat Assessment Team.

On April 13, 2020, AW Engleman apprised Barbara Von Blanckensee, the newly assigned Warden at FCC Lompoc, of the ongoing investigation. *Id.* Warden Von Blanckensee then convened a six-member Threat Assessment Team to review Okonowsky's complaints regarding the Page.[1] *Id.* That same day, the Threat

---

[1] On March 27, 2020, Okonowsky e-mailed an additional meme on the Page to AW Engleman, which he forwarded the next day to SIA Gonzales. 4-ER-0421. That meme had a picture of "United States Penitentiary Big Sandy, Kentucky," in which "Big Sandy" is underlined

Assessment Team reviewed Okonowsky's March 11, 2020 memo and interviewed her in-person. 4-ER-0431-432. During that interview, Okonowsky admitted to having "no personal or direct knowledge" as to who ran the Page and confirmed that the offending conduct occurred exclusively online. 4-ER-0432.

On April 15, 2020, the Threat Assessment Team interviewed Hellman in person. *Id.* He admitted that he created the Page and was its sole contributor, and that the "account was just a joke, 'dark prison humor,' and a way for him to blow off steam." *Id.* Hellman denied that he directed memes at Okonowsky. *Id.*

### 6. The Threat Assessment Team Issues its Report Making Several Recommendations

On April 16, 2020, the Threat Assessment Team issued a report stating that "Hellman's actions towards [Okonowsky] (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within [the] 'bullying' language/definition" in the BOP's Anti-Harassment Policy. 4-ER-0434. The report also opined that Hellman

---

in red, captioned with "The one staff member that's a giant [c***], loves inmates, and relentlessly tells on staff" and a second caption beneath stating "You know, on account of their vaganga [*sic*]." 4-ER-0429.

unconvincingly denied that the memes were directed at Okonowsky. 4-ER-0432.

The report made several recommendations, including referring Hellman to the Office of Internal Affairs and the Employment Assistance Program[2] (EAP), and issuing him a cease-and-desist letter regarding social media posts violating BOP policy. 4-ER-0435. The report also recommended that Hellman and Okonowsky continue to remain in separate complexes. *Id.*

> ### 7. Implementation of the Threat Assessment Team's Recommendations and Termination of the Page

The same day the Threat Assessment Team issued its recommendations, Hellman was issued a Cease-and-Desist Order requiring him to cease and desist from posting social media content in violation of BOP policy, including content that could reasonably be deemed as harassing or bullying another employee. 4-ER-0422. Hellman also received an EAP referral that same day. *Id.*

---

[2] The EAP is a program that provides voluntary counseling to BOP employees. 4-ER-0419.

Sometime after May 12, 2020, Hellman deleted the Page following Okonowsky's subsequent complaints that new posts included memes targeting FCC Lompoc's Correctional Psychology Department and mocking the workplace violence committee process. 1-ER-0016.

### 8. Okonowsky's Post-Complaint Career at the BOP

After Hellman deleted the Page, Okonowsky made no further complaints and remained a BOP employee for over two years. *Id.* On January 24, 2021, she was promoted to a new position at FCI Seagoville, Texas, which included a pay raise. 4-ER-0451. On July 6, 2022, Okonowsky resigned. 3-ER-0256.

### B. Procedural Background

In September 2021, Okonowsky filed suit in the Central District of California, alleging a single a hostile work environment claim under Title VII of the Civil Rights Act of 1964. 4-ER-0463-69. The Attorney General moved for summary judgment on that claim, which the district court granted. 4-ER-0384. Okonowsky timely appealed. 5-ER-0485.

## V. STANDARD OF REVIEW

This Court's review of the district court's order granting summary judgment is *de novo*. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 646 (9th Cir. 2021). Review of whether Okonowsky was subjected to a

hostile work environment and whether the Attorney General is liable for creating a hostile work environment, which are both mixed questions of law and fact, is also *de novo*. *Id.* at 647. This Court may affirm on any ground supported by the record, even if not relied on by the district court. *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1049 (9th Cir. 2007).

## VI.   SUMMARY OF THE ARGUMENT

*First*, the district court properly found that Okonowsky was not subjected to a hostile work environment. Okonowsky principally argues that the district court failed to consider the totality of the circumstances. But the district court did, in fact, consider the totality of circumstances, including that for every meme Okonowsky complained of, *none* were ever sent to her, *none* were ever displayed in the workplace, *none* were ever shown to her in the workplace, and *none* were ever discussed with her without her consent. The district court further considered that even assuming such posts were directed at Okonowsky —given that no posts ever referenced, named, pictured, or otherwise identified her—only five posts implicated protected characteristics and all the posts appeared only on Hellman's personal

page over a two-month period. The district court rightly found that such conduct taken together was not sufficiently severe or pervasive to maintain a hostile work environment claim.

*Second*, the district court correctly found that the BOP took adequate measures to remediate the alleged harassment. Recognizing that the BOP "engaged a methodical, albeit relatively lengthy, investigative and disciplinary process," the district court properly credited the institution's gradual approach to address Okonowsky's complaints. And that approach—which began with an investigation immediately following Okonowsky's initial complaint to AW Engelman —included both temporary and permanent measures that ultimately ended the offending conduct. Specifically, the institution temporarily reassigned both Okonowsky and Hellman, and issued Hellman a cease-and-desist order. As a result, the district court properly found that Okonowsky failed to raise a triable issue as to whether the BOP adequately addressed the alleged harassment. The judgment in favor of the Attorney General should be affirmed.

## VII.  ARGUMENT

To prevail on a hostile work environment claim under Title VII, Okonowsky must establish that "(1) [she] was subjected to a hostile work environment; and (2) [Appellee] was liable for the harassment that caused the hostile environment to exist." *Fried*, 18 F.4th at 647. The district court correctly found that Okonowsky established neither.

### A.    The District Court Correctly Concluded that the Posts Were Not Sufficiently Severe or Pervasive

To establish the existence of a hostile work environment, a plaintiff must demonstrate that (1) she was subjected to verbal or physical conduct of a harassing nature based on a protected characteristic, (2) the conduct was unwelcome, and (3) the conduct was severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. *Id.*

To establish a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment," Okonowsky must prove that her workplace was "both objectively and subjectively offensive, [that is] one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 871–72 (9th Cir. 2001)

(citation omitted). The "objective severity of harassment should be judged from the perspective of a reasonable person in [the plaintiff's] position." *Id.* at 872.[3] Whether a work environment is sufficiently hostile turns on "the totality of the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (citation omitted). Contrary to Okonowsky's assertion, the district court did consider the totality of the circumstances in finding the alleged conduct neither sufficiently severe nor pervasive. As discussed below, the district court so found based on a multitude of factors, including the absence of conduct in the workplace, the lack of conduct based on protected characteristics, and the limited temporal nature of the conduct.

**No Conduct Occurred in in the Workplace.** As this Court has made clear, it is the "[t]he working environment" that must "objectively

---

[3] The district court reasonably found that Okonowsky subjectively perceived that the workplace was harassing. 1-ER-0019.

be perceived as abusive." *Fuller*, 865 F.3d at 1161. Conduct outside the workplace standing alone cannot establish a hostile *work* environment. *See, e.g.*, *Fuller v. Idaho Dep't of Corr.*, 694 F. App'x 590, 591 (9th Cir. 2017) ("Fuller argues that her rapes created a hostile work environment. But, the rapes occurred outside the workplace."); *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (affirming grant of summary judgment on hostile work environment claim where "[m]uch of the evidence relied on by [the plaintiff] in establishing the actual or rumored affairs involved conduct away from the workplace or outside business hours").

Based on this Court's instruction, the district court correctly held that Hellman's conduct towards Okonowsky was neither objectively severe nor sufficiently pervasive to maintain a hostile work environment claim because "the posts occurred entirely outside of the workplace, as they were posted to Hellman's personal Instagram page." 1-ER-0021. And as the district court aptly highlighted, Okonowsky repeatedly admitted that the posts were *never* sent to her directly, *never* displayed in the workplace, *never* shown to her in the workplace, and

*never* discussed with her without her consent. *Id.* Ignoring these fatal admissions, Okonowsky advances a host of inapposite arguments.

*First*, relying heavily on *Christian v. Umpqua Bank*, 984 F.3d 801 (9th Cir. 2020), Okonowsky claims that Title VII "does not require a direct, personal interaction between the plaintiff and the harasser." AOB 44. But that reliance is misplaced, as *Christian* did not hold that a Title VII claim is actionable where, as here, there is *never* any harassing conduct between a plaintiff and the alleged harasser. Instead, *Christian* reinforced that courts must consider the totality of the circumstances. 984 F.3d at 809. The district court did so here. Moreover, in *Christian*, the harassing conduct included a combination of direct, in-person harassing interactions, such as "hand-deliver[ing]" letters to the plaintiff, *id.* at 807, and other such conduct which "the district court erred in declining to consider … such as when [the harasser] wrote [the plaintiff] a letter describing her as his 'soulmate,' sent her flowers, and watched her in the bank lobby." *Id.* at 810. No remotely similar conduct occurred here. Indeed, as the district court rightly emphasized: "[Okonowsky] fails to allege any such interactions with Hellman, demonstrating the weakness of her claim." 1-ER-0022.

19

*Second*, Okonowsky argues that the district court failed to consider every other offensive meme on the Page which implicated other protected characteristics. AOB 48. But again, Okonowsky fails to confront her own admission that no memes ever entered the workplace. For the same reason, Okonowsky cannot rely on purported harassment directed at other colleagues because there is no evidence of any such *workplace* harassment. And in any event, as the district court rightly held, because Okonowsky did not assert discrimination based on more than one protected characteristic, she cannot make an otherwise unactionable claim actionable based on protected characteristics she never asserted. *See, e.g.*, *Patee v. Pacific Northwest Bell Tel.*, 803 F.2d 476, 478 (9th Cir. 1986) ("[M]ale workers cannot assert the right of their female co-workers to be free from discrimination based on their sex.").

*Third*, citing exclusively out-of-circuit precedent, Okonowsky claims "harassing conduct need not be committed in the workplace" to be actionable under Title VII. AOB 46-47. But as the district court properly found under *Fuller*, "harassing conduct occurring exclusively outside of work cannot support a hostile work environment claim." 1-ER-0022. And as Okonowsky ignores, "the out-of-circuit cases that she

cites all involve environments akin to the workplace, where"—unlike here—"the employer controlled how employees spend their off-duty time." *Fuller,* 694 F. App'x at 591 n.1 (citing *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008); *Doe v. Oberweis Dairy*, 456 F.3d 704, 715-16 (7th Cir. 2006)). Okonowsky does not (and cannot) present any evidence that BOP controlled how its employees spent their free time while off duty or that a private social media account is akin to a workplace.

*Fourth*, Okonowsky misplaces reliance on *Fisher v. Mermaid Manor Home for Adults, LLC*, 192 F. Supp. 3d 323 (E.D.N.Y. 2016), an out-of-circuit district court decision. AOB 47. In that case, the offending conduct was unambiguously directed at the plaintiff. *Id.* at 326 ("The Instagram post consisted of two photographs of Plaintiff contrasted with a photograph of the fictional chimpanzee Cornelius from the movie *Planet of the Apes*," captioned "Yo dont [*sic*] my [f******] coworker looks like conellsussssssssssss from the movie PLANET of the APES lmfaooo"). By contrast, here it is undisputed that none of the offending posts directly referenced or otherwise identified Okonowsky in any way. 4-ER-0452-0457.

***Sparsity of Conduct Based on Protected Characteristics.*** To

sustain a hostile work environment claim, this Court requires that the

harassing conduct be directed towards a protected characteristic. *See,*

*e.g.*, *Domingo v. Brennan*, 639 F. App'x 418, 420 (9th Cir. 2016) ("a

plaintiff cannot establish a prima facie case where he presents no

evidence that comments were based on protected characteristics")

(citing *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108–09 (9th Cir.

2008)). The district court accordingly considered the nine posts

Okonowsky perceived to be directed towards her but found that even

"[d]rawing all reasonable inferences in [her] favor," "at most five of the

posts at issue possibly were made because of [her] sex." 1-ER-0020. The

remaining four posts which reflected "a workplace conflict between the

prison's SHU staff and its psychology department," would "at most,

qualify as 'mere offensive utterances' or 'offhand comments' that are not

actionable under Title VII." *Id.* (citing *Manatt v. Bank of Am., NA*, 339

F.3d 792, 798 (9th Cir. 2003)). Nor was Okonowsky's status as a staff

psychologist a protected characteristic.

The district court's finding is in line with this Court's decisions

which routinely find similar conduct, while offensive, insufficiently

severe or pervasive. *See, e.g.*, *Manatt*, 339 F.3d at 795-96 (finding no hostile work environment where plaintiff observed her coworkers laughing and saying "China Man," pulled back "their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians," ridiculed her for mispronouncing the word "Lima" and referred to her as "China woman"); *Nagar v. Found. Health Sys.*, 57 F. App'x 304, 306 (9th Cir. 2003) ("instances of national origin harassment taken together show that Nagar was subjected only to offhand comments and isolated incidents of offensive conduct" were "insufficiently severe or pervasive to alter the terms and conditions of her employment"); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2002) (finding no hostile work environment where plaintiff was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and was yelled at in front of others); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110-11 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," "histrionics," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031,

23

1036-37 (9th Cir. 1990) (finding no hostile work environment where employer posted a racially offensive cartoon, made racially offensive slurs, targeted Hispanics when enforcing rules, provided unsafe vehicles to Hispanics, and did not provide adequate police backup to Hispanics officers).

*Limited Temporal Nature of the Conduct.* The next factor the district court considered was the fact that Hellman published just five posts over a two-month period. This Court has repeatedly held that such isolated incidents fail to establish the pervasiveness necessary to evince a hostile work environment. *See, e.g.*, *Isiramen v. Yuma Reg'l Med. Ctr.*, 838 F. App'x 298, 299 (9th Cir. 2021) ("isolated incidents are insufficient to show severe or pervasive harassment"); *Alioto v. Assoc. Exch. Inc.*, 482 F. App'x 222, 223 (9th Cir. 2012) (conduct that is "episodic at best" is "insufficient to establish a prima facie case" for hostile work environment); *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) ("A violation is not established merely by evidence showing sporadic use of abusive language, gender-related jokes, and occasional teasing") (cleaned up). Consistent with this precedent, the district court correctly reasoned that "Hellman's five

posts to his personal social media page over two months that were not sent directly to Plaintiff or presented to her in the workplace fall short of establishing an objectively abusive work environment." 1-ER-0024.

Accordingly, the district court properly found, based on the totality of a multitude of factors it considered, that Hellman's conduct was not objectively severe or sufficiently pervasive to maintain a hostile work environment.

### B. The District Court Properly Found that the BOP took Adequate Remedial Measures to Address the Alleged Harassment

The district court next correctly found that Okonowsky failed to create a triable issue as to whether the BOP took adequate steps to address the alleged harassment. Rather than identify any reversible error committed by the district court, Okonowsky instead relies heavily on purported inadequacies with the BOP's investigation of her complaint. But as this Court has made clear, where "the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation." *Swenson v. Potter*, 271 F.3d 1184, 1198 (9th Cir. 2001).[4] The district court's finding rests on

---

[4] As she did below, Okonowsky baselessly argues that it is

several well-supported reasons, all of which are consistent with this Court's decisions.

*First*, the district court correctly recognized that the undisputed evidence reflected that the BOP "engaged a methodical, albeit relatively lengthy, investigative and disciplinary process," beginning the day of Okonowsky's first complaint about the Page. 1-ER-0026; *Swenson*, 271 F.3d at 1193 ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified.").

*Second*, the district court properly credited the BOP's voluntary reassignment of Okonowsky during the pendency of its investigation and its later reassignment of Hellman upon Okonowsky's allegation

---

"undisputed" that BOP officials knew of the Page "long before" she reported it. AOB 61. The district court properly rejected this assertion, finding that Okonowsky failed to provide any evidence that the BOP was aware of the alleged harassment "long before" February 18, 2020. 1-ER-0026. And consistent with this Court's holding in *Fuller* that "an employer can only be liable for harassment of which it knows or should know," *Fuller*, 47 F.3d at 1528, the district court found that the BOP was not obligated to take remedial measures until February 18, 2020, when Okonowsky first reported the Page. 1-ER-0025-26. Neither can Okonowsky colorably contend that the BOP did not exhaustively investigate her complaints. Moreover, although Okonowsky insists that the Page was "followed by over a hundred employees at FCC Lompoc," her own declaration identifies just four employees. 3-ER-0250-51.

that he ran the Page. *Id.* at 1192 (finding no liability where employer, among other things, "separated the two employees pending the outcome of an investigation by moving Swenson to a different location within the same facility").

*Third*, the district properly relied on the BOP's assembly of a Threat Assessment Team in light of Okonowsky's ongoing complaints and the swift implementation of the Threat Assessment Team's recommendations "the same day they were released, issuing Hellman a Cease-and-Desist Order and referring him to the EAP." 1-ER-0027; *see, e.g.*, *Intlekofer v. Turnage*, 973 F.2d 773, 780 (9th Cir. 1992) (discussing how employers must take gradually more severe disciplinary measures as harassment persists).

*Fourth*, the district court properly recognized the effectiveness of the BOP's actions which resulted in Hellman no longer "posting memes of a sexual nature potentially directed to Plaintiff," followed by his deletion of the Page in its entirety. 1-ER-0027; *Swenson*, 271 F.3d at 1197 ("In considering whether the employer's response was appropriate, we consider the overall picture … The harassment stopped").

This Court has routinely found employers not liable where, as here, it promptly investigates and takes remedial measures reasonably calculated to end the alleged harassment. *See, e.g.*, *Watson v. Las Vegas Valley Water Dist.*, 268 F. App'x 624, 626 (9th Cir. 2008) (employer not liable where its "response to the December 4th incident was prompt and effective: Nguyen was interviewed, admitted his grossly inappropriate conduct and received an unpaid, one-day suspension; neither he nor any other employee has engaged in similar conduct since"); *Swenson*, 271 F.3d at 1197 ("Even assuming that the investigation was less than perfect, the Postal Service nevertheless took prompt action to remedy the situation. The harassment stopped.").

The district court's finding that the BOP promptly engaged in adequate remedial measures should be affirmed.

## VIII. CONCLUSION

For the reasons set forth above, the Attorney General respectfully requests that the district court's grant of summary judgment in his favor be affirmed in its entirety.

Dated: December 11, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

  /s/ *Zakariya K. Varshovi*
ZAKARIYA K. VARSHOVI
Assistant United States Attorney
Attorneys for Defendant-Appellee
Merrick B. Garland

29

## STATEMENT OF RELATED CASES

Counsel for Appellee is not aware of any related cases pending in this Court.

Dated: December 11, 2023      Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

  /s/ *Zakariya K. Varshovi*
ZAKARIYA K. VARSHOVI
Assistant United States Attorney

Attorneys for Defendant-Appellee
Merrick B. Garland

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 23-55404

I am the attorney or self-represented party.

**This brief contains** | 4,419 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [        ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Zakariya K. Varshovi | **Date** | 12/11/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*