No. 23-55404

# In the United States Court of Appeals for The Ninth Circuit

LINDSAY OKONOWSKY,
Plaintiff-Appellant,

v.

MERRICK B. GARLAND, ATTORNEY GENERAL,
UNITED STATES ATTORNEY GENERAL
Defendant-Appellee.

Appeal from the United States District Court
for the Central District of California
Honorable Virginia A. Phillips, Chief District Judge
(2:21-cv-07581-VAP-AS)

## PLAINTIFF-APPELLANT'S REPLY BRIEF

LINDSAY L. BOWDEN
  *Counsel of Record*
BROCK & GONZALES, LLP
6701 Center Drive West
  Suite 610
Los Angeles, CA 90045
(310) 294-9595
*lb@brockgonzales.com*

ANDREW S. PLETCHER
*Counsel of Record*
PLETCHER LAW, APC
3435 E. Thousand Oaks Blvd.
  Suite 6457
Westlake Village, CA 91359-7997
(805) 630-3245
*Andrew@pletcher-law.com*

*Counsel for Plaintiff and Appellant*

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 5

II.    ISSUES PRESENTED FOR REVIEW ............................................... 6

III.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TRIABLE ISSUES OF FACT EXIST REGARDING OKONOWSKY'S HOSTILE WORK ENVIRONMENT CLAIM ................................................................... 7

   A.   DEFENDANT/APPELLEE IMPROPERLY RELIES ON THE DISTRICT COURT'S ORDER ON *DE NOVO* REVIEW ................................................... 7

   B.   CONTRARY TO DEFENDANT/APPELLEE'S CLAIM, THE DISTRICT COURT FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES IN RULING AT SUMMARY JUDGMENT ................................................... 9

     1.   Contrary to Garland's Claim, Hellman's "8_and_hitthe_gate" Instagram Page Permeated the Workplace and Created A Hostile Working Environment .................... 9

     2.   Contrary to Garland's Claim, Department of Justice Policies Controlled Employees Social Media Posts ................................................. 12

     3.   Contrary to Garland's Claim, *Christian v. Umpqua Bank* (9th Cir. 2020) 984 F.3d 801 Supports Plaintiff/Appellant's Position ..................... 14

     4.   Contrary to Garland's Claim, Okonowsky May Establish a Violation of Title VII Even If the Hostility Was Not Completely Directed At Her ................................ 15

     5.   Contrary to Garland's Claim, the District Court Should Have Considered All of the Harassing and Discriminatory Posts Hellman Made On the "8_and_hitthe_gate" Instagram Page .......................................................... 16

     6.   Contrary to Garland's Claim, Hellman published more than five posts on his "8_and_hitthe_gate" Instagram Page ........................................... 17

   C.   DEFENDANT/APPELLEE INCORRECTLY RELIES ON THE DISTRICT COURT OPINION TO SUPPORT ITS ARGUMENT THAT THE BUREAU OF PRISONS TOOK ADEQUATE REMEDIAL MEASURES TO ADDRESS THE ALLEGED HARASSMENT ................................................................... 18

IV.   CONCLUSION ................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

<strong><u>Page</u></strong>

<u>**Cases**</u>

*Bagdadi v. Nazar*
(9th Cir. 1996) 84 F.3d 1194 ............................................................... 7

*Bradley v. Harcourt Brace and Co.*
(9th Cir. 1996) 104 F.3d 267 ............................................................... 7

*Choctaw Nation v. United States*
(1886) 119 U.S. 1 ............................................................................... 7

*Christian v. Umpqua Bank*
(9th Cir. 2020) 984 F.3d 801 ....................................................... passim

*Dawson v. Marshall*
(9th Cir. 2009) 561 F.3d 930 ................................................... 7, 8, 18

*Dominguez-Curry v. Nevada Transp. Dept.*
(9th Cir. 2005) 424 F.3d 1027 ........................................................... 16

*Fisher v. Mermaid Manor Home for Adults, LLC*
(E.D.N.Y. 2016) 192 F.Supp.3d 323 .............................................. 10, 11

*Harris v. Forklift Systems, Inc.*
(1993) 510 U.S. 17 ..................................................................... passim

*McAlindin v. County of San Diego*
(9th Cir. 1999) 192 F.3d 1226 ................................................. 7, 8, 18

*McGinest v. GTE Service Corp.*
(9th Cir. 2004) 360 F.3d 1103 ............................................................. 9

*Meritor Savings Bank, FSB v. Vinson*
(1986) 477 U.S. 57 ..................................................................... 10, 16

*Patee v. Pacific Northwest Bell Tel.*
(9th Cir. 1986) 803 F.2d 476 ............................................................. 15

*Rabkin v. Oregon Health Sciences University*
(9th Cir. 2003) 350 F.3d 967 ............................................................... 7

*Salve Regina Coll. v. Russell*
(1991) 499 U.S. 225 ........................................................................... 7

*Steiner v. Showboat Operating Co.*
(9th Cir. 1994) 25 F.3d 1459 ................................................................. 9

*Thompson v. North American Stainless, LP*
(2011) 562 U.S. 170 ............................................................................. 15

*United States v. Silverman*
(9th Cir. 1988) 861 F.2d 571 ................................................................ 7

*Voigt v. Savell*
(9th Cir. 1995) 70 F.3d 1552 ................................................................ 7

*Warren v. City of Carlsbad*
(9th Cir. 1995) 58 F.3d 439 .................................................................. 7

*Woods v. Graphic Commc'ns*
(9th Cir. 1991) 925 F.2d 1195 ............................................................. 16

**Statutes**

Title VII Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et. seq.) .......................................... 5, 15

## I.  __INTRODUCTION__

Plaintiff/Appellant LINDSAY OKONOWSKY ("Okonowsky") hereby submits her Reply Brief in support of her request for reversal of the District Court's dismissal of her claim against Defendant/Appellee MERRICK B. GARLAND, United States Attorney General, ("Garland") at summary judgment as triable issues of fact exist as to whether the conduct of Lieutenant Steven Hellman ("Hellman"), a supervisor at FCC Lompoc, was sufficiently severe or pervasive to alter the conditions of Okonowsky's employment and establish a hostile work environment claim under Title VII of the Civil Rights Act of 1964.

As Plaintiff/Appellant's Opening and Reply papers will show, the District Court incorrectly granted summary judgment as to Dr. Okonowsky's claim under Title VII Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et. seq.) for sexual discrimination and harassment under a hostile work environment by failing to broadly consider "all the circumstances" of the FCC Lompoc workplace, including how Hellman's "8_and_hitthe_gate" Instagram page became intertwined with the workplace culture of FCC Lompoc to create an environment that was both subjectively and objectively "hostile" under Title VII. *See, Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 23 ("But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.").

Instead, when properly considered and viewed in the light most favorable to Dr. Okonowsky, the facts in this case show: Hellman's "8_and_hitthe_gate" Instagram page was followed by hundreds of FCC Lompoc employees who "liked" and commented on many of its posts, referenced workplace interactions and named specific staff members, and violated Department of Justice policies (including the Bureau of Prisons Anti-Harassment Policy and the Standards of Employee Conduct) which prevents employees from posting "any memes/information

directed at any Agency employee which reasonably could be construed as harassing/bullying, or which discredit the Bureau of Prisons." Moreover, Dr. Okonowsky testified that she "felt ostracized at the brunt of the jokes" at work because she "witnessed co-workers discussing the content of the page during working hours" and knew that "employees had seen the memes targeting [her]" which had "effects on [her] mental health" because she "was confident that any employees who viewed the page would know that [she] was the subject of the offensive memes." [3-ER-0250 – 3-ER-0332 (3-ER-0253).] Ultimately, Dr. Okonowsky transferred to FCC Seagonville, TX and eventually resigned from the Bureau of Prisons. [3-ER-0256.]

Finally, in analyzing "all of the circumstances" of the workplace, the District Court should have also considered the other posts which involved subjects such as race, slavery, religion, homophobia, sexual violence, and the Holocaust, as they were intertwined with the day-to-day culture of the FCC Lompoc because they were "liked," commented on, discussed by its employees, and were a part of the workplace of FCC Lompoc.

Accordingly, Plaintiff/Appellant requests that this Court *reverse* the District Court's order granting summary judgment.

## II.    ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err in granting Merrick Garland's Motion for Summary Judgment and dismissing Okonowsky's claim under Title VII because she failed to demonstrate a triable issue of fact as to Hellman's conduct being sufficiently severe or pervasive to establish a hostile work environment claim?

2.    Did the District Court err in granting Merrick Garland's Motion for Summary Judgment and dismissing Okonowsky's claim under Title VII because the Federal Correctional Complex fulfilled its obligation to take remedial measures to stop the harassment?

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TRIABLE ISSUES OF FACT EXIST REGARDING OKONOWSKY'S HOSTILE WORK ENVIRONMENT CLAIM

### A. DEFENDANT/APPELLEE IMPROPERLY RELIES ON THE DISTRICT COURT'S ORDER AT SUMMARY JUDGMENT ON *DE NOVO* REVIEW

It is well-established that the standard of review on appeal of a grant of summary judgment is *de novo*. *See, McAlindin v. County of San Diego* (9th Cir. 1999) 192 F.3d 1226, 1232, *amended* 201 F.3d 1211, and *cert. denied,* 530 U.S. 143 (2000) (citing *Bradley v. Harcourt Brace and Co.* (9th Cir. 1996) 104 F.3d 267, 269); *Bagdadi v. Nazar* (9th Cir. 1996) 84 F.3d 1194, 1197 (citing *Warren v. City of Carlsbad* (9th Cir. 1995) 58 F.3d 439, 441).

*De novo* review means "from the beginning and as if the[y] were new and had freshly arisen." *Choctaw Nation v. United States* (1886) 119 U.S. 1, 30. A court reviewing *de novo* "'do[es] not defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered.'" *Dawson v. Marshall* (9th Cir. 2009) 561 F.3d 930, 933 (alteration in original) (quoting *United States v. Silverman* (9th Cir. 1988) 861 F.2d 571, 576); *Voigt v. Savell* (9th Cir. 1995) 70 F.3d 1552, 1564 (describing *de novo* review as "without deference to the district court's conclusion"); *see also, Rabkin v. Oregon Health Sciences University* (9th Cir. 2003) 350 F.3d 967, 970 ("'When *de novo* review is compelled, no form of appellate deference is acceptable.'") (quoting *Salve Regina Coll. v. Russell* (1991) 499 U.S. 225, 238).

Here in its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") concedes that *de novo* review is the appropriate standard of review on an appeal of a grant of summary judgment. *Compare,* Defendant/Appellee's

Answering Brief 13-14 (stating, in part, "[t]his Court's review of the district court's order granting summary judgment is *de novo*." (citations omitted)) *with* Plaintiff/Appellant Lindsay Okonowsky's Opening Brief 39 ("The standard of review on appeal of a grant of summary judgment is *de novo*." (citations omitted). And yet, throughout its Answering Brief, Defendant/Appellee Garland cites to and solely relies on the District Court's Order at Summary Judgment to support its position that summary judgment was correctly granted.[1] *See, e.g.,* Defendant/Appellee's Answering Brief 18 (citing 1-ER-0021), 19 (citing 1-ER-0022), 20 (citing 1-ER-0022), 26 (citing 1-ER-0026), and 27 (citing 1-ER-0027). This reliance on the District Court's Order at Summary Judgment below is incompatible with the *de novo* review standard as this Court reviews the "matter anew," requiring evidentiary support for any argument made by Defendant/Appellee. *See, McAlindin v. County of San Diego* (9th Cir. 1999) 192 F.3d 1226, 1232 (summary judgment review is *de novo*); *Dawson v. Marshall* (9th Cir. 2009) 561 F.3d 930, 933 (stating *de novo* review means the reviewing court "freely consider[s] the matter anew"). Accordingly, because a majority of Defendant/Appellee's Answering Brief fails to cite to any evidentiary support beyond the District Court's Order at Summary Judgment, this Court should reverse.

///

---

[1] A review of the Answering Brief finds one citation to the record other than the District Court's Order at Summary Judgment. *See,* Defendant/Appellee's Answering Brief 21.

**B. CONTRARY TO DEFENDANT/APPELLEE'S CLAIM, THE DISTRICT COURT FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES IN RULING AT SUMMARY JUDGMENT**

In determining if an environment is so hostile as to violate Title VII, this Court follows the "middle path" approved by the United States Supreme Court in analyzing "all the circumstances" of the harassment and whether it is sufficiently severe or pervasive to alter the conditions of the victim's employment to create an abusive working environment. *See, McGinest v. GTE Service Corp.* (9th Cir. 2004) 360 F.3d 1103, 1112-1113 (citing *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 ("The Supreme Court has followed a 'middle path' with regard to the level of hostility or abuse necessary to establish a hostile work environment."). Said otherwise, the "middle path" finds that an isolated comment will not constitute harassment under Title VII while conduct that "pollutes the victim's workplace, making it more difficult for [the victim] to do her job, to take pride in her work, and to desire to stay on in her position" to be in violation of Title VII. *See, Steiner v. Showboat Operating Co.* (9th Cir. 1994) 25 F.3d 1459, 1463 (citing *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 22).

**1. Contrary to Garland's Claim, Hellman's "8_and_hitthe_gate" Instagram Page Permeated the Workplace and Created A Hostile Working Environment**

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") argues that "the district court correctly held that Hellman's conduct towards Okonowsky was neither objectively severe nor sufficiently pervasive to maintain a hostile work environment claim because 'the posts occurred entirely outside of the workplace, as they were posted to Hellman's personal Instagram page.' 1-ER-0021." *See,* Defendant/Appellee's Answering Brief 18. However,

Defendant/Appellee's reliance on this portion of the District Court's Order at Summary Judgment is misplaced as the U.S. Supreme Court has held that "no single factor" is required to consider whether a workplace environment is "hostile" or "abusive" under Title VII. *See, Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 22-23 (stating "no single factor" is required to determine whether an environment is "hostile" or "abusive" so long as a court looks at all the circumstances). In fact, so long as the posts on the "8_AND_HITTHE_GATE" Instagram page contributed to the creation of a workplace environment that would be reasonably be perceived as hostile, it does not matter that the posts existed on an online network outside of the workplace. *See, Meritor Savings Bank, FSB v. Vinson* (1986) 477 U.S. 57, 65 (stating "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult"); *c.f., Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 22 ("So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, (citation omitted), there is no need for it also to be psychologically injurious.").

 *Fisher v. Mermaid Manor Home for Adults, LLC* (E.D.N.Y. 2016) 192 F.Supp.3d 323 supports this proposition.[2] At summary judgment, the Eastern District of New York did not focus its analysis on the fact that the Instagram posts occurred outside of the workplace, but looked at what effect the post had on the workplace environment. *See, Fisher, supra,* 192 F.Supp.3d 323, 329 (stating "a

---

[2] Defendant/Appellee's Answering Brief mistakenly attributes Plaintiff/Appellant's citation of this case as an attempt to distinguish the content of the Instagram posts; however, Plaintiff/Appellant's Opening Brief cites *Fisher v. Mermaid Manor Home for Adults, LLC* (E.D.N.Y. 2016) 192 F.Supp.3d 323 for the proposition that "federal courts have found that harassing conduct need not be committed in the workplace to alter the terms, conditions, and privileges of employment for purposes of a Title VII claim." *See,* Plaintiff/Appellant's Opening Brief 46-47.

reasonable jury could find that the Instagram post … created a hostile work environment … The Instagram post, published to the world and seen by Plaintiff's co-workers, humiliated Plaintiff to such an extent that she was found crying in the Mermaid Manor dining room").

Here, viewed in the light most favorable to Dr. Okonowsky, the record shows Hellman's "8_and_hitthe_gate" Instagram page was followed by hundreds of FCC Lompoc employees who "liked" and commented on many of its posts [3-ER-0250 – 0251; 3-ER-0255; 3-ER-0277; 3-ER-0311; 4-ER-0429 – 0430], referenced workplace interactions and named specific staff members [3-ER-0288; 3-ER-0330- 0331], and ultimately violated Department of Justice policies (including the Bureau of Prisons Anti-Harassment Policy and the Standards of Employee Conduct) which prevents employees from posting "any memes/information directed at any Agency employee which reasonably could be construed as harassing/bullying, or which discredit the Bureau of Prisons." [3-ER-0258 – 3-ER-0264 ("The attached memorandum titled, "Guidance on the Personal Use of Social Media by Department Employees (March 24, 2014) (Attachment A) highlights standards of conduct applying to online communications using personal social media.")]; [3-ER-0265 - 3-ER-0275 (Guidance on the Personal Use of Social Media by Department Employees)]; [4-ER-0435.] Moreover, Dr. Okonowsky submitted a declaration stating that she "felt ostracized at the brunt of the jokes" at work because she "witnessed co-workers discussing the content of the page during working hours" and knew that "employees had seen the memes targeting [her]" which had "effects on [her] mental health" because she "was confident that any employees who viewed the page would know that [she] was the subject of the offensive memes." [3-ER-0250 – 3-ER-0332 (3-ER-0253 (Paragraphs 19-20)).] Accordingly, this Court should reverse.

///

### 2. Contrary to Garland's Claim, Department of Justice Policies Controlled Employees Social Media Posts

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") argues that "Okonowsky does not (and cannot) present any evidence that BOP controlled how its employees spend their free time while off duty or that a private social media account is akin to the workplace." *See,* Defendant/Appellee's Answering Brief 21. However, viewed in the light most favorable to Dr. Okonowsky, the record shows the U.S. Department of Justice wrote Guidance on the Personal Use of Social Media by Department Employees (March 24, 2014) detailing "certain government-wide standards of conduct and rules of professional conduct that apply to online communications *at all times, regardless of whether they are at work, outside the office, or using government equipment*." [3-ER-0250 – 3-ER-0256 (3-ER-0254 (Paragraph 25))]; [3-ER-0265 - 3-ER-0275 (Guidance on the Personal Use of Social Media by Department Employees)]. Within this Guidance, the Justice Department discusses employees' personal social media activities, noting:

- **Work or Department-related posts:** Employees may post, comment, or share public information on matters related to their work or the work of the Department provided such communications fully comport with the restrictions set forth in this guidance… [3-ER-0274.]

- **Engaging with colleagues:** Employees are permitted to engage with colleagues including superiors and subordinances, on their personal social media sites. That said, care must be exercised to ensure that other rules are not inadvertently violated. [3-ER-0274.]

- **Discrimination and harassment:** As with Department communications, employees may be subject to discipline if they use social media to engage in harassing or discriminatory conduct toward other employees (or individuals

or groups) based on their race, color, religion, national origin, sex, gender identity, age, disability (physical or mental), genetic information, status as a parent, sexual orientation, marital status, political affiliation or any other protected status. [3-ER-0274.]

- **Anonymous and pseudonymous postings:** As indicated previously, employees should recognize that attempts to post anonymously or pseudonymously are often unsuccessful, and therefore should take care not to engage in activity that they otherwise would not be permitted to engage in if their identity was known. The applicable rules and standards of conduct apply equally whether an employee uses social media anonymously (or using a pseudonym) or while properly identified. [3-ER-0274.]

Applied to the facts herein, because the Department of Justice created Guidance on the Personal Use of Social Media by Department Employees to address how employees are to spend their time on social media "whether they are at work or outside of the office," the discriminatory and harassing posts on Hellman's "8_and_hitthe_gate" Instagram page were sufficiently intertwined with the workplace – as they violated these policies – such that it cannot be said the harassing conduct occurred "exclusively outside of work" as Defendant/Appellee Garland argues. [4-ER-0434 – 4-ER-0435 (Conclusions/Recommendations of Threat Assessment Team) ("The Team further notes that a referral to the Office of Internal Affairs for investigation of Hellman's alleged misconduct has already been made. That is appropriate because, as described above, his actions appear to have violated several Agency policies.").

///

**3.** **Contrary to Garland's Claim,** *Christian v. Umpqua Bank*
**(9th Cir. 2020) 984 F.3d 801 Supports Plaintiff/Appellant's**
**Position**

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland")
argues that the "district court rightly emphasized: '[Okonowsky] fails to allege any
[personal] interactions with Hellman, demonstrating the weakness of her claim.' 1-
ER-0022." *See,* Defendant/Appellee's Answering Brief 19. In support of
Defendant/Appellee's position, Garland argues that Okonowsky's reliance on
*Christian v. Umpqua Bank* (9th Cir. 2020) 984 F.3d 801 is misplaced. *See, Id.*
However, both Defendant/Appellee and Plaintiff/Appellant cite *Christian v.
Umpqua Bank* (9th Cir. 2020) 984 F.3d 801 for the proposition that this Court is to
consider "all the circumstances" when evaluating a Title VII claim. *Compare,*
Defendant/Appellee's Answering Brief 19 ("Instead, *Christian* reinforced that
courts must consider the totality of the circumstances. 984 F.3d at 809.") with
Plaintiff/Appellant Lindsay Okonowsky's Opening Brief 45-46 ("'Our obligation
is to "consider all the circumstances," *Davis* 520 F.3d at 1095, including those
incidents that do not involve verbal communication between the plaintiff and the
harasser, physical proximity, or physical or sexual touching.'").

Applied to the facts herein, as discussed in Plaintiff/Appellant's Opening
Brief, the District Court failed to consider all of the harassing and discriminatory
posts Hellman made on the "8_and_hitthe_gate" Instagram page because they were
not sent directly to Okonowsky, did not involve any interaction between
Okonowsky and Hellman, and "took place outside of the workplace." [1-ER-0021
– 1-ER-0024 (Order at Summary Judgment).] However, following *Christian v.
Umpqua Bank* (9th Cir. 2020) 984 F.3d 801, this evidence should have been
considered as part of the "all the circumstances" analysis as each of the posts go to
the determination of whether the workplace environment at FCC Lompoc was

subjectively and objectively "hostile." *See, Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 23 ("But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances."); *Christian v. Umpqua Bank* (9th Cir. 2020) 984 F.3d 801, 809 (same). [3-ER-0249 – 3-ER-0333 (Okonowsky's Memorandums (dated March 11, 2020, March 27, 2020, and March 30, 2020, April 27, 2020, and May 12, 2020, showing examples of the posts).]

> **4. Contrary to Garland's Claim, Okonowsky May Establish a Violation of Title VII Even If the Hostility Was Not Completely Directed At Her**

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") argues – without citation – "because Okonowsky did not assert discrimination based on more than one protected characteristic, she cannot make an otherwise unactionable claim actionable based on protected characteristics she never asserted." *See,* Defendant/Appellee's Answering Brief 20. In support of Defendant/Appellee's position, Garland relies on *Patee v. Pacific Northwest Bell Tel.* (9th Cir. 1986) 803 F.2d 476, which can be distinguished as the male employees in *Patee* lacked standing to assert discrimination under Title VII under a protected class to which they didn't belong. *See, Id.* at 479. Compared to the case herein, Okonowsky has standing as a former FCC Lompoc employee to bring a hostile work environment action under Title VII Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et. seq.) as she has an interest arguably sought to be protected by Title VII. *See, Thompson v. North American Stainless, LP* (2011) 562 U.S. 170, 177-78; 42 U.S.C. §2000e-5(f)(1) ("a civil action may be brought … by the person claiming to be aggrieved.")

Moreover, as part of the "all of the circumstances" analysis, a plaintiff may establish a violation of Title VII even if the hostility was not directly targeted at the

plaintiff as the statue provides employees with "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 66; *see also, Christian v. Umpqua Bank* (9th Cir. 2020) 894 F.3d 801, 810-11 ("Offensive comments do not all need to be made directly to an employee for a work environment to be considered hostile."); *Dominguez-Curry v. Nevada Transp. Dept.* (9th Cir. 2005) 424 F.3d 1027, 1036 (finding the district court erroneously disregarded evidence of discriminatory comments that Stacey directed to other women in the division); *Woods v. Graphic Communications* (9th Cir. 1991) 925 F.2d 1195, 1202 (holding that work environment was racially hostile where "Woods was surrounded by racial hostility, and subjected directly to some of it").

> **5. Contrary to Garland's Claim, the District Court Should Have Considered All of the Harassing and Discriminatory Posts Hellman Made On the "8_and_hitthe_gate" Instagram Page**

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") argues that the District Court correctly analyzed only five of the numerous posts, while failing to consider the others because they "are not actionable under Title VII." *See,* Defendant/Appellee's Answering Brief 22. To support its position, Defendant/Appellee argues that it was proper for the District Court to only consider five of Hellman's posts as "this Court requires that the harassing conduct be directed towards a protected characteristic." *See, Id.* However, in analyzing "all of the circumstances" of the workplace, the District Court should have also considered the other posts which involved subjects such as race, slavery, religion, homophobia, sexual violence, and the Holocaust, as they were intertwined with the day-to-day culture of the FCC Lompoc because they were "liked," commented on, and discussed by its employees. [3-ER-0250 – 0251; 3-ER-0253; 3-ER-0255; 3-

ER-0277; 3-ER-0287; 3-ER-0290; 3-ER-0295; 3-ER-0302; 3-ER-0305; 3-ER-0311; 3-ER-0332; 4-ER-0429 – 0430.] And certainly, when taken together and viewed in light most favorable to Okonowsky, these additional posts establish genuine issues of material fact as to the FCC Lompoc workplace environment and whether it was "hostile" for purposes of a Title VII claim. *See, Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 23 ("But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.").

### 6. Contrary to Garland's Claim, Hellman published more than five posts on his "8_and_hitthe_gate" Instagram Page

In its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") argues that the District Court correctly "reasoned that 'Hellman's five posts to his personal social media page over two months that were not sent directly to Plaintiff or presented to her in the workplace fell short of establishing an objectively abusive work environment.' 1-ER-0024." Defendant/Appellee's Answering Brief 24-25. However, the record is clear that Hellman made numerous discriminatory and harassing posts (both before and after the Threat Assessment Team report was released) that violated the Department of Justice's Guidance on the Personal Use of Social Media by Department Employees policy. [3-ER-0249 – 3-ER-0333 (Okonowsky's Memorandums (dated March 11, 2020, March 27, 2020, and March 30, 2020, April 27, 2020, and May 12, 2020 showing examples of the posts).] In reviewing each of the posts to determine whether they created a workplace environment that was "hostile" or "abusive," it's clear that triable issues of fact exist to show Hellman's posts created a hostile work environment at FCC Lompoc.

*See, Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 23 ("But we can say that whether an environment is "hostile" or "abusive" can be determined only by

looking at all the circumstances."); *Christian v. Umpqua Bank* (9th Cir. 2020) 984 F.3d 801, 809 (same). Accordingly, this Court should reverse the district court's order granting summary judgment.

### C. DEFENDANT/APPELLEE INCORRECTLY RELIES ON THE DISTRICT COURT OPINION TO SUPPORT ITS ARGUMENT THAT THE BUREAU OF PRISONS TOOK ADEQUATE REMEDIAL MEASURES TO ADDRESS THE ALLEGED HARASSMENT

Here in its Answering Brief, Defendant/Appellee Merrick B. Garland ("Garland") *relies solely* on the District Court's Order at Summary Judgment to support its argument that the district court "correctly found that Okonowsky failed to create a triable issue as to whether the Bureau of Prisons ("BOP") took adequate steps to address the alleged harassment." *See,* Merrick B. Garland's Answering Brief 25-28 (citing 1-ER-0026 and 1-ER-0027 of the District Court's Order at Summary Judgment). As discussed above and incorporated herein, under *de novo* review and *without* deference to the lower court's ruling, Defendant/Appellee fails to support its argument that adequate remedial measures were taken to address the alleged harassment. *See, McAlindin v. County of San Diego* (9th Cir. 1999) 192 F.3d 1226, 1232 (summary judgment review is *de novo*); *Dawson v. Marshall* (9th Cir. 2009) 561 F.3d 930, 933 (stating *de novo* review means the reviewing court "freely consider[s] the matter anew"). For this reason, this Court should reverse.

Moreover, Defendant/Appellee also fails to respond to any of Plaintiff/Appellant's arguments in its Opening Brief. *See,* Plaintiff-Appellant's Opening Brief 60-68. First, it is undisputed that key individuals throughout FCC Lompoc were aware of the 8_and_hitthe_gate" Instagram posts before Dr. Okonowsky first reported them, raising key questions of how much FCC Lompoc knew or should have known about the discriminatory and harassing posts and

whether management level employees at FCC Lompoc failed to act. [3-ER-0250-0251; 3-ER-0258 – 0259; 3-ER-0338 – 0339; 4-ER-0418.] Moreover, the reactions of management upon learning about the graffiti indicate that Dr. Okonowsky's concerns about the "8_and_hitthe_gate" Instagram page were not being taken seriously. *See,* Plaintiff-Appellant's Opening Brief 62. [3-ER-0251 – 3-ER-0252; 3-ER-0259 – 3-ER-0260.]  Third, regarding the voluntary transfer, Defendant/Appellee failed to respond to the evidence showing that despite Dr. Okonowsky transferring from working at the Medium to Low on February 18, 2020, her interactions with Hellman continued. [3-ER-0254; 3-ER-0262 – 3-ER-0263; 3-ER-0341 – 3-ER-0344; 4-ER-0418; 4-ER-0435.]  Fourth, triable issues of fact exist as to FCC Lompoc's investigation and remediation of Hellman's actions, notably the recommendations of the Threat Assessment Team did not prevent future conduct by the harasser as Hellman continued to post on his "8_and_hitthe_gate" Instagram page after the report's release. *See,* Plaintiff-Appellant's Opening Brief 64-67.  Finally, based the findings of the Threat Assessment Team, ***the only person who appears to have been punished was Dr. Okonowsky*** who had to remain transferred to Low "while an investigation into Hellman's actions is completed and, if misconduct is sustained, any resulting discipline is implemented." [4-ER-0435.]  And while the report characterizes this as her "preference," at no time did it appear that FCC Lompoc considered moving Hellman and allowing Dr. Okonowsky to continue working at her originally assigned unit. [4-ER-0435.]

///

**IV.** <u>**CONCLUSION**</u>

In light of the above, *Plaintiff-Appellant* Lindsay Okonowsky respectfully requests that this Court reverse the district court's order granting summary judgment.

Date: January 31, 2024

s/ Andrew S. Pletcher

Lindsay Bowden, Esq.
BROCK & GONZALES, LLP

Andrew S. Pletcher, Esq.
PLETCHER LAW, APC

Attorneys for Plaintiff-Appellant
**LINDSAY OKONOWSY**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  23-55404

I am the attorney or self-represented party.

**This brief contains**  4,188  **words,** including                   words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated                   .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  /s/ Andrew S. Pletcher   **Date**  1/31/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                     *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 23-55404

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Plaintiff-Appellant's Reply Brief

**Signature** | /S/ Andrew S. Pletcher | **Date** | 01/31/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*